FIRST NATIONAL CITY BANK, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE CAGUAS, recurrido.

*Número:* G-63-1    *Resuelto:* 16 de enero de 1964

*McConnell, Valdés & Kelley,* y *Ramón Morán Loubriel,* abogados del recurrente. La Registradora compareció por escrito.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

. El Registrador de la Propiedad de Caguas denegó la inscripción de una escritura otorgada por Webster E. Pullen, a nombre y en representación del First National City Bank, mediante la cual dicho banco vende un inmueble a la corporación Cosmopolitan Realty Corporation por la suma de $1,205.25, por no acreditarse el carácter y facultades de Pullen para representar al banco ya que no aparece que dicho mandatario tenga facultades *expresas* para ejecutar un contrato de compraventa y otorgar la correspondiente escritura a nombre de la referida entidad. En la comparecencia de la escritura en cuestión se expresa que el banco está representado por Pullen, en su carácter de Vicepresidente de la institución, quien asegura tener autorización para ello de dicha asociación bancaria la cual acreditará cuando fuere necesario. Junto con la escritura se presentó una copia autenticada ante notario de la Sec. 2 del Art. X del Reglamento del referido banco titulada "Otorgamiento de Documentos", que en síntesis dispone que cualquier convenio, hipoteca, escritura, traspaso, transferencias . . . y otros instrumentos o documentos, pueden ser firmados, suscritos . . . entregados y aceptados a nombre del banco por cualquier Vicepresidente del mismo. (1)   .

---

(1) El texto inglés de la referida Sec. 2 lee así:

"Execution of Instruments. All agreements, indentures, mortgages, deeds, conveyances, transfers, certificates, declarations, receipts, discharges, releases, satisfactions, settlements, petitions, schedules, accounts, affidavits, bonds, undertakings, proxies and other instruments or documents may be signed, executed, acknowledged, verified, delivered or accepted in behalf of the Association by the Chairman, or the Chairman of the Executive Com-

■ Tanto la argumentación del Registrador como la del banco recurrente gira exclusivamente alrededor del significado de los términos *deeds, conveyances* y *transfers.* Convenimos con el recurrente que el concepto de *venta* está comprendido dentro del término *conveyance* usado corrientemente en el idioma inglés para significar el traspaso del título o cualquier interés en propiedad inmueble. 9A *Words and Phrases,* 223 et seq. Black's Law Dictionary, 4th ed. pág. 402. Tanto en las traducciones de nuestras decisiones como en la traducción oficial de la Ley General de Corporaciones se ha usado el término *conveyance* para significar el traspaso o venta de bienes inmuebles. Véanse los textos castellano e inglés en *Santini Fertilizer Co.* v. *Burgos,* 34 D.P.R. 869 (1926); *López* v. *Ortiz,* 33 D.P.R. 3 (1924) y 14 L.P.R.A. sec. 1202 (4).

Sin embargo, las partes no tratan la cuestión, a nuestro juicio fundamental en este caso, con respecto a si la referida sección del reglamento del banco que específica e indubitablemente faculta a sus Vicepresidentes a suscribir los documentos enumerados les faculta además en derecho para llevar a cabo la transacción de venta a que se refiere el título cuya inscripción se ha denegado.

■ Es doctrina firmemente establecida en esta jurisdicción que para el ejercicio por un mandatario, de actos de riguroso dominio como la venta de bienes inmuebles, se requiere poder *expreso* (Arts. 1211 y 1604 del Código Civil,

---

mittee, or the President, or any Vice-Chairman, or any Executive Vice-President, or the Chairman Credit Policy Committee, or the Vice-President Operations, or any Senior Vice-President, or the Manager Overseas Division, or the Cashier, or the Comptroller, or the Deputy Manager Overseas Division, or any Vice-President, or any Deputy Comptroller, or, if in connection with the exercise of any of the fiduciary powers of the Association, by any of said officers or by any Trust Officer. Any such instruments may also be executed, acknowledged, verified, delivered or accepted in behalf of the Association in such other manner and by such other officers as the Board of Directors may from time to time direct. The provisions of this Section 2 are supplementary to any other provision of these By-Laws."

1930—31 L.P.R.A. secs. 3376 y 4425). *Sucrs. de Andreu & Co.* v. *Reg. de la Prop.*, 20 D.P.R. 421 (1914).

■ La Ley federal aplicable a los bancos nacionales como el First National City Bank no impide que tales bancos posean y dispongan de bienes inmuebles en el curso normal de su negocio excepto que la posesión de esa clase de bienes está limitada a un término máximo de cinco años, 12 U.S.C.A. sec. 29; 10 Am. Jur. 2d, sec. 270 y sgtes. Por otra parte, ni el Presidente ni los Vicepresidentes de una corporación o de un banco están investidos por el solo hecho del cargo que ocupan de la facultad de vender o de otro modo disponer de los activos inmuebles de la empresa en ausencia de autorización al. efecto consignada en el certificado de incorporación, el reglamento o en una resolución o acuerdo de la Junta de Directores. (²) 12 U.S.C.A. sec. 24, inciso 6. *Republic Nat. Bank & Trust Co.* v. *Asbury*, 91 S.W.2d 824 (Tex. 1936); Thompson, *On Corporations*, 3rd ed., Vol. 4, pág. 99, escolio 16 y pág. 105; Fletcher *On Corporations*, Vol. 2, sec. 605, págs. 720, 724, 725, sec. 627, págs. 776, 780, sec. 634, pág. 786; 10 Am. Jur. 2d sec. 121, pág. 122, sec. 133, págs. 131 y 132.

■ En el caso ante nos, el recurrente arguye que la parte del reglamento del banco previamente citada delega facultad suficiente en el Vicepresidente Pullen para llevar a cabo a nombre del banco la transacción de venta de propiedad inmueble de la institución. No tiene razón. El título de la referida Sec. 2 expone el propósito para el cual se redactó que es el otorgamiento o firma de documentos, escritos, etc. En el cuerpo de la sección se usan términos que denotan la autoridad de otorgar y firmar contratos de las clases allí especificadas, pero nada hay en su contenido que exprese la

---

(²) En cuanto a las facultades de un socio gestor para comparecer a nombre de una sociedad en actos de riguroso dominio, véanse *Vélez González* v. *Registrador,* 88 D.P.R. 608 (1963); *Morell* v. *Registrador de Arecibo,* 27 D.P.R. 122 (1919).

determinación de facultar a los Vicepresidentes para celebrar dichos contratos a nombre y en representación del banco. Es de notarse que la delegación en cuestión es al efecto de firmar, suscribir, hacer entrega de y aceptar la documentación o escritos de tales transacciones. La facultad delegada se limita a comparecer por la institución bancaria en el trámite necesario para el perfeccionamiento de las distintas transacciones indicadas en la referida sección que el banco lleve a cabo. No se ha acreditado al Registrador delegación alguna de la facultad del banco para convenir en vender propiedad inmueble (Thompson, *On Corporations*, 3rd ed., Vol. 4, sec. 2496, pág. 99 y el escolio 16 de esa página, y págs. 132–4).

■ Aunque en la facultad de vender debe entenderse comprendida la de otorgar el documento o escritura correspondiente, [3] no sucede otro tanto cuando la situación es a la inversa. En *Yabucoa Sugar Co.* v. *Reg. de Humacao*, 30 D.P.R. 576 (1922), dijimos que "el hecho de que el *administrador* esté autorizado para firmar a nombre de la sociedad las enajenaciones que éste haga, no quiere decir que esté autorizado para vender los bienes inmuebles de la misma. Para ello, dados los términos del contrato social y la ley, y la jurisprudencia, se necesita acuerdo expreso de la sociedad." Véase además la resolución de la Dirección General de los Registros de 18 de mayo de 1933 (Roca Sastre y Molina, *Jurisprudencia Registral*, vol. VII, págs. 386 y 391).

*Se confirmará la nota recurrida.*

---

[3] *Thompson, op. cit.*, sec. 2517, pág. 132.